FILED
2019 May-09 PM 02:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ROBERT CLARENCE WARDEN, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v. ] | 4:18-cv-01024-ACA |
| ] | |
| NANCY A. BERRYHILL, ] | |
| COMMISSIONER OF SOCIAL ] | |
| SECURITY, ] | |
| ] | |
| Defendant. ] | |

## MEMORANDUM OPINION

Plaintiff Robert Clarence Warden[1] appeals the decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I. PROCEDURAL HISTORY

On October 9, 2013, Mr. Warden applied for a period of disability and disability insurance benefits, alleging that his disability began on July 8, 2013. (R. at 292–300). The Commissioner initially denied his application and he requested review by an Administrative Law Judge ("ALJ"). (*Id.* at 184, 186–90).

---

[1] The complaint identifies the plaintiff as "Robert Clarence Warden," but at one of the hearings before an Administrative Law Judge, he testified that his name is actually "Clarence Robert Warden." (R. at 71–72).

After holding a hearing (*id.* at 26–64), the ALJ issued an unfavorable decision (*id.* at 163–79), which the Appeals Council reversed and remanded with instructions for the ALJ to consider the opinion of a treating physician (*id.* at 182–873). On remand, the ALJ held another hearing (R. at 65–110), then issued another unfavorable decision (*id.* at 10–25). The Appeals Council denied Mr. Warden's request for review of that decision. (*Id.* at 1–6). The Commissioner's decision is now final and ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Where the ALJ denies benefits and the Appeals Council denies review, [this court] review[s] the ALJ's decision as the Commissioner's final decision." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks and alteration omitted).

"Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry*, 802 F.3d at 1267 (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh

the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that the relevant time period was from Mr. Warden's alleged disability onset date of July 8, 2013, through his date last insured of December 31, 2015. (R. at 12). He had not engaged in substantial gainful activity during that period. (*Id.*).

The ALJ found that during the relevant time period, Mr. Warden had one severe impairment: coronary artery disease. (R. at 12). During the same period, Mr. Warden also had hypertension, hyperlipidemia, gastroesophageal reflux disease, mild dementia, arthritis, anxiety, and depression, all of which were non-severe. (*Id.* at 12–15). Finally, the ALJ noted that Mr. Warden had in the past been treated for carpal tunnel syndrome, sleep apnea, mild asthma/chronic obstructive pulmonary disease, and restless leg syndrome, but he had not received any treatment for those impairments during the relevant time period. (*Id.* at 15).

The ALJ concluded that Mr. Warden did not have an impairment or combination of impairments that met or medically equalled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 15). After considering the evidence, the ALJ determined that Mr. Warden had

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can frequently use bilateral hand controls. He can frequently reach overhead bilaterally. He can frequently climb ramps and stairs, but never climb ladders or scaffolds. He can frequently stoop, kneel, crouch and crawl. The claimant should never be exposed to unprotected heights. He would be limited to routine and repetitive tasks and making simple work

4

related decisions. In addition to normal breaks, he would be off-task 5% of an 8-hour workday in non-consecutive minutes.

(R. at 15–16).

Based on his finding about Mr. Warden's residual functional capacity, and with the assistance of testimony from a vocational expert, the ALJ found that Mr. Warden would be able to perform jobs such as custodian, industrial cleaner, and machine helper, all of which exist in significant numbers in the national economy. (R. at 19). Accordingly, the ALJ determined that Mr. Warden had not been under a disability as defined in the Social Security Act during the relevant time period. (*Id.* at 19–20).

## IV. DISCUSSION

Mr. Warden asserts that (1) the ALJ erred by affording little weight to the opinion of his treating physician and substantial weight to the opinion of a consultative physician and a non-examining physician; (2) the ALJ failed to adequately explain his decision to discredit Mr. Warden's testimony about his pain and symptoms; and (3) substantial evidence does not support the ALJ's decision that Mr. Warden does not have an impairment that meets or medically equals Listings 4.04, 11.14, 12.02, and 14.09. (Doc. 11 at 23–35).

### 1. Weight Afforded to Physicians

The ALJ considered the opinions of several physicians. (*See* R. at 13–15, 17–18). Mr. Warden challenges the weight the ALJ gave to three of those

5

physicians: treating physician Hilda Bernice Craze, M.D.; consultative physician Sathyan V. Iyer, M.D.; and State agency medical consultant Richard Walker, M.D. (Doc. 11 at 23–31).

    *i.*     *Dr. Craze*

In April 2014, Dr. Craze filled out a "Medical Sources Statement of Ability to Do Work-Related Activities (Physical)." (R. at 786–89). She concluded Mr. Warden could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday with frequent change in position and the ability to walk around, and perform only limited pushing or pulling using his upper extremities. (*Id.* at 786–87). She also found that he could climb, balance, and stoop occasionally but that he could never kneel, crouch, or crawl, and that he had limited sight and hearing. (*Id.* at 787–88). Dr. Craze based these recommendations on Mr. Warden's arm and hand "problems," including weakness and swelling in the joints; hip, knee, and back pain; hypertension and hyperlipidemia; blindness in one eye; decreased hearing; and allergies. (*Id.* at 786–89).

In support of her statement, Dr. Craze submitted medical records showing that she was Mr. Warden's primary care physician during the relevant period. (R. at 42). In the years before July 2013, she reported that Mr. Warden suffered

from mild dementia, confusion, fatigue, chronic obstructive pulmonary disease, depression and anxiety, and knee pain. (*Id.* at 679, 683, 685–86, 694, 699, 701, 728). In 2005, Mr. Warden told Dr. Craze that he had fallen down twice because of a knee not locking, after which she referred him to an orthopedic center. (*See id.* at 735, 792–93). The orthopedic physician examined Mr. Warden and found "right knee pain" and "left knee internal derangement." (*Id.* at 793).

During the relevant time period (July 8, 2013 to December 31, 2015), Dr. Craze's medical records about Mr. Warden show that he continued to complain of knee, back, shoulder, hip, and groin pain. (R. at 794, 807, 810). But the records also show that Dr. Craze reported normal ranges of motion without pain in Mr. Warden's upper and lower extremities, albeit with swelling and redness in the joints of his hands, and swelling of his elbow. (*Id.* at 813, 815–16, 821–23, 825–26). He consistently denied chest pain and examinations routinely showed normal heart sounds and heart rates. (*Id.* at 808–09, 812, 821–22, 912–13, 915, 919).

The ALJ gave little weight to Dr. Craze's opinion, finding that her treating notes do not support her opinion that Mr. Warden is limited to a range of light work. (R. at 18). Mr. Warden contends that the ALJ erred in doing so because she was a treating physician. (Doc. 11 at 28–29). He points to medical records showing that before and during the relevant time period, he had complained of

7

knee pain as well as pain in his back, shoulder, hip, and groin. (*Id.* at 29) (citing R. at 508, 713, 735, 792, 794, 807–27).

Absent good cause, an ALJ must give "substantial or considerable weight" to the medical opinions of "treating physicians" like Dr. Craze. *Winschel*, 631 F.3d at 1179; *see* 20 C.F.R. § 416.1527(c)(2). But "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985); *cf.* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Good cause to reject an opinion exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004). "With good cause, an ALJ may disregard a treating physician's opinion, but he must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179. This court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

In this case, the ALJ articulated a specific justification for giving little weight to Dr. Craze's opinion: contrary to her report about Mr. Warden's limitations, her own treatment notes showed "normal physical examination and very little treatment for pain/arthritis, no complaints of breathing issues (complaints of breathing issues were not during the period under review), and a stable cardiac presentment." (R. at 18; *see id.* at 808–09, 812–13, 815–16, 821–23, 825–26, 912–13, 915, 919). Because the ALJ accurately described Dr. Craze's treatment notes, on which he relied to make his credibility determination, this court cannot disturb that determination. *See, e.g.*, *Hunter*, 808 F.3d at 823; *Crawford*, 363 F.3d at 1159–61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence).

  ii. *Dr. Walker and Dr. Iyer*

In December 2013, Dr. Iyer examined Mr. Warden at the Commissioner's request. (R. at 781). Mr. Warden denied having any chest pain or shortness of breath, but he reported shoulder, elbow, right, hip, knee, and back pain. (*Id.*). Dr. Iyer found that Mr. Warden had a regular heartrate, normal "sounds," and "good pedal pulses." (*Id.* at 782). Dr. Iyer found that Mr. Warden had tendinopathy of his right shoulder, "[s]ymptoms suggestive of Fibromyalgia

9

syndrome," controlled hypertension, and a history of coronary artery disease that was currently not symptomatic. (*Id.* at 783). He concluded that "[i]n his current condition, [Mr. Warden] does not appear to have any significant physical limitation." (*Id.*). The ALJ gave great weight to Dr. Iyer's opinion except for the notation that Mr. Warden had symptoms suggestive of fibromyalgia syndrome, finding that the opinion was otherwise consistent with the objective medical evidence showing no symptoms of coronary artery disease during the relevant period and no other significant issues. (R. at 17–18).

In January 2014, at the Commissioner's request, Dr. Walker reviewed Mr. Warden's medical records and issued an assessment of Mr. Warden's application. (R. at 155–57). Dr. Walker found that Mr. Warden could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds, stand or walk about six hours in an eight-hour workday, push and pull an unlimited amount, frequently climb ramps and stairs, balance, stoop, kneel, and crouch, occasionally crawl, and never climb ladders, ropes, or scaffolds. (R. at 156–57). He concluded Mr. Walker had no manipulative, visual, or communicative limitations, but he did have environmental limitations, in that he had to avoid concentrated exposure to extreme cold and heat, fumes, odors, dusts, gases, poor ventilation, and hazards like machinery and heights. (*Id.* at 157). The ALJ gave great weight to Dr. Walker's opinion, finding that it was consistent with a normal

physical examination and records showing a stable heart and very little treatment for pain or arthritis. (*Id.* at 18).

Mr. Warden contends that the ALJ erred in giving substantial weight to Dr. Walker's opinion and the majority of Dr. Iyer's opinion. (Doc. 11 at 29–30). His only argument in support of that contention is that "case law . . . requires that the opinion of a treating physician be entitled to greater weight than the opinion of a non-treating or non-examining physician." (*Id.* at 30).

Contrary to Mr. Warden's position, nothing prevents an ALJ from giving greater weight to the opinion of a non-treating source than the opinion of a treating source, as long as the ALJ has articulated good cause for allocating the weight in that way. Indeed, the Social Security regulations provide only that

> *Generally*, we give more weight to medical opinions from your treating sources . . . . *If* we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(c)(2) (emphasis added). In this case, the ALJ did not find that the medical evidence supported Dr. Craze's opinion, and as a result did not give it controlling weight. The ALJ explained that he gave Dr. Iyer's and Dr. Walker's opinions more weight because the medical evidence supported those opinions. This court cannot second guess those determinations. *See Winschel*, 631 F.3d at

1178. The court finds that substantial evidence supports the ALJ's decision to afford little weight to Dr. Craze's opinion and great weight to Dr. Walker's opinion and the majority of Dr. Iyer's opinion.

### 2. Subjective Pain Testimony

At the two hearings before the ALJ, Mr. Warden testified that arthritis and neuropathy caused him pain in various parts of his body, impeding his ability to work. (R. at 28, 35, 36–37, 46–48, 67, 75–76, 80–81, 83–84, 89–97). He also testified about a triple bypass surgery that he had before the alleged onset date of his disability, and the limitations that doctors had given him at the time of the surgery. (*Id.* at 37–38, 49–50, 54). Finally, he testified about memory problems he had been experiencing recently. (*Id.* at 42–43, 51–52).

In the unfavorable decision, the ALJ stated that Mr. Warden

> alleges debilitating symptomatology and limitations associated with his alleged impairments, yet the evidence as a whole fails to confirm a disabling level of functional limitations caused by any physical or mental impairment. While it is reasonable the claimant may experience some symptoms that would cause some exertional and non-exertional limitations, the objective medical evidence does not support a complete inability to work.

(R. at 17). Mr. Warden argues that the ALJ's rejection of his testimony was erroneous because he did not explicitly discuss Mr. Warden's testimony about the effects of his arthritis, neuropathy, chronic pain, and dementia. (Doc. 11 at 33–34).

To establish disability based on subjective pain testimony, a claimant must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The ALJ evaluates a claimant's testimony in light of other evidence in the record. 20 C.F.R. § 404.1529(c)(4). "[C]redibility determinations are the province of the ALJ," and the court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

Contrary to Mr. Warden's assertion, the ALJ did consider his testimony about his own limitations. The ALJ explicitly noted that Mr. Warden had alleged "debilitating symptomatology and limitations associated with his alleged impairments," but that the medical evidence did not support that testimony. (R. at 17). Although Mr. Warden takes issue with that credibility determination, he argues only that "[t]he medical records and Dr. Craze's April 22, 2014 opinions [sic] confirm Warden's functional limitations as it pertains to his mental and physical conditions." (Doc. 11 at 33–34). But as the court has already explained, the ALJ was entitled to reject Dr. Craze's opinion based on the medical evidence in the record. No other evidence in the record supports Mr. Warden's subjective

testimony about his own limitations during the relevant time period. Accordingly, substantial evidence supports the ALJ's credibility determination about Mr. Warden's testimony. *See Mitchell*, 771 F.3d at 782.

### 3. Listings 4.04, 11.14, 12.02, and 14.09

Mr. Warden argues that substantial evidence does not support the ALJ's finding that he did not have an impairment or combination of impairments that met or medically equaled one of the Listings. (Doc. 11 at 34–35). He contends that he qualifies for Listing 4.04 (Ischemic Heart Disease), Listing 11.14 (Peripheral Neuropathy), Listing 12.02 (Neurocognitive Disorders), and Listing 14.09 (Inflammatory Arthritis), but he provides only cursory and conclusory statements without providing any citations to the record or caselaw. (*See id.*).

"[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (quotation marks omitted).

Although Mr. Warden identifies an argument that the ALJ failed to find him disabled under Listings 4.04, 11.14, 12.02, and 14.09, he provides no substantive

argument or citations to the record. (*See* Doc. 11 at 34–35). He does not set out the requirements of each listing, or even the title of each listing. (*See id.*). His perfunctory argument gives neither the Commissioner nor the court any guidance about his argument aside from the fact that he asserts the existence of an error. *See Singh*, 561 F.3d at 1278 ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue . . . ."); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). Nor does Mr. Warden's reply brief remedy the deficiencies of his initial brief. (*See generally* Doc. 18).

Because Mr. Warden's brief does not present adequate argument on this issue, the court will not address it.

## III. CONCLUSION

The court **WILL AFFIRM** the Commissioner's decision to deny Mr. Warden's application for a period of disability and disability income benefits.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this May 9, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE